UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

      Plaintiff,

v.

ZIGGY'S BAR AND GRILL, INC AND
JAMES BARNES,

      Defendants.
_____/

Case No. 15-11585

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND AWARDING DAMAGES (ECF NO. 14)

This action arises from Plaintiff J & J Sports Production, Inc.'s allegation that Defendants Ziggy's Bar and Grill, Inc. and James Barnes violated federal law by illegally broadcasting a boxing match on May 5, 2013. Defendants have failed to defend or otherwise appear in this action. Plaintiff now moves this Court for Entry of a Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and seeks statutory damages in addition to attorney's fees and costs against the Defendants jointly and severally. (ECF No. 14)

A hearing on this matter was held on November 18, 2015. Defendants did not attend the hearing. For the reasons set forth below, the Court will GRANT Plaintiff's Motion for Entry of Default Judgment and AWARD damages and attorney's fees and costs in the amount of $8,464.86.

### I. BACKGROUND

On May 1, 2015, Plaintiff filed its complaint against Defendants Ziggy's Bar and Grill, Inc. and James Barnes. Plaintiff alleges in its complaint that, pursuant to contract, it had the exclusive nationwide television distribution rights for the "*Floyd Mayweather, Jr. v. Robert Guerrero, WBC Welterweight Championship Fight Program*" and its undercard preliminary bouts as well as the fight

commentary encompassed in the television program event (collectively "the Program") that were telecast nationwide on May 4, 2013. (Compl. ¶ 12). Plaintiff asserts that Defendant Barnes was the owner, officer, operator, or otherwise the person in charge of Ziggy's Bar and Grill. (*Id*. at ¶ 9-10).

For a "commercial fee," a business establishment could have received the unscrambled signal enabling the business to view the program either through Plaintiff or an authorized distributor. (Compl. ¶¶ 13-14). A "Rate Card" set the fee for the Program based on the seating capacity of the business. (*See* Pl.'s Br., Ex. 9, Rate Card).[1] In an attempt to combat piracy of its programs, Plaintiff hired an investigative agency who, in turn, retained auditors who visited various commercial locations that had no record of paying the required commercial fee to receive the Program.

Plaintiff claims Defendants illegally broadcast the Program to the patrons of Ziggy's Bar and Grill on or about May 4, 2013 in violation of the Communication Act of 1934, as amended, 47 U.S.C. § 605, *et seq*., and the Cable & Televison Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq*. (Compl. at ¶¶ 11-25; *see also* Ex. 8, Andre Wallace Aff.). Plaintiff also claims that the unauthorized broadcast constituted conversion. (*Id*. at ¶¶ 26-29).

Plaintiff provides that Defendant Barnes was served on May 29, 2015 and Defendant Ziggy's Bar and Grill was served on May 30, 2015. (ECF Nos. 5, 6, Certificate of Service). On July 1, 2015, Plaintiff requested a entry of a Clerk's default against Defendants Barnes and Ziggy's Bar and Grill which were entered the same day. (ECF Nos. 12 & 13). Plaintiff filed the current Motion for Entry of Default Judgment on September 11, 2015. (ECF No. 14).

---

[1] All exhibits referenced refer to those attached to Plaintiff's Motion for Entry of Default Judgment.

A hearing on the Motion for Entry of Default Judgment was held on November 18, 2015. As explained on the record, the Court notes that a person representing himself as Defendant James Barnes' attorney contacted the Court prior to the hearing on November 18, 2015 and indicated that his client was aware of the motion hearing but would not be attending. In a second phone call, the same person later indicated Defendant Barnes would be attending the hearing. Regardless, no one representing any Defendant attended the hearing.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 55(b) a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *See Hanner v. City of Dearborn Heights*, No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14, 2008). Once a default has been entered by the clerk's office, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995), *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citation omitted). Once a default is obtained, the party may then file for a default judgment by the clerk or by the court. FED. R. CIV. P. 55(b). If the plaintiff's well-pleaded allegations are sufficient to support a finding of liability as to the defendant on the asserted claims, then the Court should enter a judgment in favor of the plaintiff. *See Cross*, 441 F. Supp. 2d at 848. Although Rule 55(b)(2) does not provide a standard to determine when a party is entitled to a judgment by default, the case law sets forth that the court must exercise "sound judicial discretion" when determining whether to enter the judgment. Wright & Miller, 10A Federal Practice & Procedure, § 2685 (3d ed. 1998) (collecting cases). After a court determines that a default

judgment should be entered, it will determine the amount and character of the recovery awarded. *See id*. § 2688 (collecting cases).

## III. ANALYSIS

A.   Sufficient Service

"Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default. *Russell v. Tribley*, No. 10-14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases).

Plaintiff filed two certificates of service in this action. (ECF Nos. 5, 6). The first certificate, related to Defendant Ziggy's Bar and Grill, evidences that Plaintiff served "MALE IN CHARGE WHO REFUSED TO GIVE HIS NAME" on May 30, 2015 at the business address of Ziggy's Bar and Grill, 16309 E Warren, Detroit 48224. (Ex. 2; ECF No. 5). The other certificate of service, related to Defendant James Barnes, states that Plaintiff served Defendant James Barnes on May 29, 2015 by first class mail, return receipt requested and restricted delivery to "James Barnes (also Resident Agent for Defendant Ziggy's Bar and Grill, Inc.)". (Ex. 3; ECF No. 6). The address listed is: "Ziggy's Bar and Grill 6309 E Warren, Detroit 48224."[2] (*Id.*)

The Affidavit in support of Plaintiff's request for Clerk's Entry of Default against Defendant James Barnes indicates that service was affected on "5/29/2015 at 6390 E Warren Detroit, MI 48224 by First Class US Mail, Return Receipt Requested, Restricted Delivery to James Barnes." (Ex. 4; ECF No. 10). The Affidavit in support of Plaintiff's request for Clerk's Entry of Default against

---

[2] The Court notes that this address is missing the first digit of the correct address. The USPS tracking slip provides that the complaint and summons were undeliverable on May 22, 2015, however, then notes that the documents were delivered on May 29, 2015 and bears a signature indicating that it James Barnes, the addressee, accepted the package. (Ex. 3, at 2-3).

Defendant Ziggy's Bar and Grill states only that service was affected "on 5/29/2015 at 6390 E Warren Detroit, MI 48224 by First Class US Mail, Return Receipt Requested, Restricted Delivery to James Barnes, Resident Agent of Ziggy's Bar & Grill, Inc." (Ex. 5; ECF No. 11).

As set forth above, in the instant case Defendant Barnes was served on May 29, 2015 by certified US mail, return receipt requested with restricted delivery to Defendant Barnes. Plaintiff has also supplied a signed copy of the return receipt evidencing Defendant Barnes' signature. (Ex. 3; ECF No. 6, Certificate of Service). This type of service comports with Michigan Court Rule 2.105(A)(2) which requires the summons and a copy of the complaint be sent by registered or certified mail, return receipt requested and delivery restricted to the addressee, with a copy of the return receipt signed by the defendant. Mich. Ct. Rule 2.105(A)(2); *see also* Fed. R. Civ. P. 4(e)(1) (allowing service on an individual by "following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made..."). Accordingly, Plaintiff properly served Defendant Barnes pursuant to the Federal Rules of Civil Procedure.

Regarding service upon Defendant Ziggy's Bar and Grill, Plaintiff represents in its certificate of service that it served Defendant Ziggy's Bar and Grill on May 30, 2015 by personally serving an unidentified man in charge of the business who refused to identify himself. (Ex. 2; ECF No. 5). However, the affidavit attached to Plaintiff's request for clerk's entry of default states that service was affected on Ziggy's Bar and Grill solely by serving a copy of the complaint and summons on the business address of Ziggy's Bar and Grill through first class certified mail, restricted delivery to James Barnes, resident agent of Ziggy's Bar and Grill. (*See* Ex. 5, ECF No. 11).

Pursuant to FED. R. CIV. P. 4(h), a corporate entity may be properly served by delivering a copy of the summons and complaint to an officer, managing agent, or general agent, or any other agent authorized by appointment or law to receive service of process and by also mailing a copy of the complaint and summons to the corporate defendant, or by any manner as provided for individuals in Rule 4(e)(1) which allows for service pursuant to the law of the state in which the district is located. FED. R. CIV. P. 4(h), (e). "Michigan law allows service of process upon a corporation by serving a summons and a copy of the complaint on an officer or the resident agent personally or, alternatively, by serving a summons and a copy of the complaint on a director, trustee or person in charge of the office as well as sending a summons and a copy of the complaint by registered mail, addressed to the principal of the office in the corporation." *Etherly v. Rehabitat Systems of Mich.*, No. 13-11360, 2013 WL 3946079, * 1 (E.D. Mich. Jul. 31, 2013) (Borman, J.). Accordingly, only personally serving the person in charge of the corporation *or* only mailing the summons and complaint through registered mail upon the corporate office would not constitute adequate service of process under the Federal Rules of Civil Procedure or the Michigan Court Rules. However, construing the two certificates of service that Plaintiff has filed together, it is clear that Plaintiff properly served Defendant Ziggy's Bar and Grill under Michigan Court Rule 2.105(D)(4) by serving a person in charge of the business personally and also mailing a copy of the summons and complaint through registered mail to the corporate office. *See* Mich. Ct. Rule 2.105(D)(4); *see also* Fed. R. Civ. P. 4(l)(3) ("Failure to prove service does not affect the validity of service.").

As the Court concludes that the Defendants have been properly served, it considers all of Plaintiff's well-pled allegations admitted. *See Cross*, 441 F. Supp. 2d at 846. Therefore, the Court's inquiry becomes whether Plaintiff's allegations are sufficient to support its claims and whether an

award of damages is appropriate.

   B.  Violations of 47 U.S.C. § 605 and § 553[3]

   Pursuant to 47 U.S.C. § 553(a)(1), "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator". Section 605(a), on the other hand, applies to satellite transmissions and provides in relevant part that a person who receives, transmits, or assists in transmitting any communication by wire or radio may not divulge or publish that communication. *See Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001) (noting the Cable Communications Policy Act of 1984 was enacted to "address a problem which is increasingly plaguing the cable industry – the theft of cable service."); *see also Joe Hand Promotions, Inc. v. KSD, Inc.*, No. 3:13CV951, 2014 WL 4675264, *6-7 n.1 (N.D. Ohio, Sept. 18, 2014) (examining the legislative histories of both statutes and noting in a footnote that there is some struggle regarding the interplay between the two statutes). In this current action, where Plaintiff does not know how the Defendant pirated the signal (via satellite or through over a cable system) it is pro forma to plead both statutes, however, a Plaintiff cannot collect damages under both statutes. *See J & J Sports Productions, Inc. v. Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, *2 (E.D. Mich. Feb. 13, 2012).

   Plaintiff's complaint, motion for entry of default, and attached exhibits establish that Defendants violated both § 605 and § 553 by intercepting and displaying the Program on May 5,

---

[3] Plaintiff fails to address or move for entry of default judgment on its state law claim of conversion. Accordingly, the Court finds this claim waived.

2013 at Ziggy's Bar and Grill located at 16309 E Warren, Detroit, Michigan for the purpose of direct or indirect commercial advantage and private financial gain. Plaintiff provides that (1) Defendants did not pay to receive or publish the Program; (2) Defendant Barnes is an owner, officer, operator, or otherwise the person is charge of Ziggy's Bar and Grill; (3) the commercial rate charged to a business with seating of 0-100 was $2,200 (Hubbel Aff. at ¶ 14; Ex. 9, Rate Card); and (4) an auditor, Andre Wallace, hired by Plaintiff visited the bar on May 5, 2013 at approximately 12:15 AM and observed that approximately 45 people were in the bar, which had five televisions displaying the Program, and that there was a ten dollar cover charge to enter the bar to watch the Program. (Ex. 8, Wallace Aff.).

Courts in this district and elsewhere have held that to state a claim against an individual under § 605 or §553, a plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities. *See Joe Hand Prod., Inc. v. Cain*, No. 06-12213, 2006 WL 2466266, at *2 (E.D. Mich., Aug. 24, 2006); *J & J Sports Productions, Inc. v. Stanley*, 2014 WL 2763635 (E.D. Mich. June 18, 2014) (granting motion for default judgment against individual defendants where the plaintiff had pled the individual defendant had supervisory control over the activities and received a financial benefit); *J & J Sports Prods., Inc. v. Walia*, 2011 WL 902245 *3 (N.D. Cal. Mar. 14, 2011) (collecting cases and observing "[i]ndeed, it appears that all courts addressing the issue have applied the copyright standard for individual liability to violations of § 553 and § 605."); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp.2d 498, 501 (S.D.N.Y. 2008).

Here, Plaintiff has alleged that Defendant Barnes was an owner, operator, officer and/or person in charge with "dominion, control, oversight and management of the commercial

establishment" of Ziggy's Bar and Grill and that Defendant Barnes was either aware of and approved of the unauthorized display of the Program or was physically present at the time the Program was displayed. (Compl. ¶¶ 9-10). Ergo, because Defendant Barnes is alleged to be an owner of Defendant Ziggy's Bar and Grill it is logical to conclude that he received a financial benefit from displaying the Program. Taking these well pled allegations as true, the Court finds that Plaintiff has established individual liability as to Defendant Barnes as well as Defendant Ziggy's Bar and Grill pursuant to § 605 and § 553.

As the Plaintiff correctly notes, when a defendant is liable under both § 553 and § 605, the plaintiff may only recover under one of those section. *See Stanley*, No. 12-14093, 2014 WL 2763635, *2 (E.D. Mich. June 18, 2014) (citing *Trier*, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009)). In the present case, Plaintiff elects to recover under 47 U.S.C. § 605. (Pl.'s Br. at 4-5).

Pursuant to § 605, the "aggrieved party" may choose between actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Here, Plaintiff requested statutory damages. (*Id*. at 4-5). As set forth in the statute, Plaintiff can recover statutory damages for each violation in the sum of not less than $1,000 or more than $10,000 as determined by the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Yet, where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain" the court can increase the award by the amount of $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff seeks a total of $10,000.00 in statutory damages for the single unauthorized broadcast of the Program and $100,000.00 for the willfulness of the violation. (Compl. at ¶ 20).

Courts in this district look to certain relevant facts to determine a damage award in these actions including: the number of patrons at the time of the violation, the seating capacity of the

establishment, the rate charged by the plaintiff for the broadcast, whether the defendant charged a cover to patrons or "was likely to have obtained significant profits in another manner." *Id.* (quoting *Trier*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3). "The damages awarded by the Court 'should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant.'" *Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, *2 (quoting *Ribeiro*, 562 F. Supp. 2d at 501). In *Trier*, the court explained that

> [w]hen the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. When the exact number of patrons is known, the court will based the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50.

*Id.*, No. 08-11159, 2009 U.S. Dist. LEXIS 6415, at *3 (quoting *Ribeiro*, 562 F. Supp. 2d at 501-02) (internal citation and quotation marks removed)).

In this case, Plaintiff has evidenced that there were approximately 45 patrons at the bar and a ten dollar cover was being charged to view the Program. Pursuant to the Rate Card, a commercial establishment with seating of 0-100 would have been changed a rate of $2,200.00 to display the Program. (Ex. 9, Rate Card).

Regarding the willfulness of the violation, Plaintiff asserts that the violation at issue in this case was a willful violation based on the fact that the Program was exhibited in a commercial establishment for profit. In the present action there are no allegations that these Defendants have previously displayed an unauthorized fight, but the Defendants did charge a ten dollar cover charge. *See G&G Closed Circuit Events, LLC v. Port Bar, Inc.*, No. 14-12984, 2015 WL 144588, *2 (E.D. Mich., Jan. 11, 2015) (Edmunds, J.) ("For purposes of § 605, conduct is 'willful' where there were repeated violations over time." (quotation omitted)); *Joe Hand Promotions, Inc. v. Easterling*, No.

10

08-1259, 2009 WL 1767579, * 6 (N.D. Ohio, June 22, 2009) (noting that some courts have found charging a cover price or increasing drink prices during an unauthorized broadcast is sufficient to show a willful violation.) (citations omitted).

The Court concludes that *Trier* and *Ribeiro* are instructive and will therefore determine statutory damages in this action by multiplying the number of patrons in the bar at the time the Program was displayed (45 patrons) by a dollar amount of $50, for a total statutory damage award of $2,250.00. *See Ribeiro*, 562 F. Supp. 2d at 501-02 (ultimately multiplying the number of patrons by the pay-per-view residential rate of $54.95 and then doubling that amount to $1,500 to meet the statutory minimum, and then multiplying that amount by three because the violation was willful); *see also Granada Lounge*, 2012 WL 447272, at *2-3 (finding that the commercial rate defendant would have been charged (rounded up to the statutory minimum) was appropriate while the higher base award of $10,000 was not justified because a cover was not charged and there were only 68 to 79 people in attendance, but then multiplying the $1,000 base award by three for willfulness.); *Trier*, 2009 U.S. Dist. LEXIS 6415 at *3 (finding that where there were only 21 people at the establishment, where no cover was charged, and the commercial rate would have been $1600, the court found that $1600 was an appropriate based award and multiplied by three based on the willfulness of the violation.); *see also J&J Sports Prod. v. Matti*, No. 13-13963 (awarding a 50 dollar per patron fee for a subtotal of $5500.00 and multiplying the statutory base award by four because the violation was willful as evidenced by the cover charge collected and evidence the Defendant was a repeat violator).

The Court further finds that Defendants' violation was willful based on the cover charge collected. Additionally, the Court observes that the amount of statutory damages ($2,250) in this

11

action is only $50 dollars more than Defendants would have been charge pursuant to the Rate card to legally display the Program and such parity does not create much of deterrent. Accordingly, given these facts, the Court will multiply the statutory damages of $2,250 by a factor of three (3) for a total damage award of $6,750.00.

    C.    Attorney Fees

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." In the present case, Plaintiff's attorney has submitted an affidavit and invoice providing that he owed a total of $1,714.86 in fees and costs. (Ex. 10, Invoice). Plaintiff's counsel requests a billable rate of $210.00 per hour for a total of 5.9 billable hours and $475.86 in costs ($400 filing fee and $75.86 service and mailing fees).

Plaintiff has submitted the economics of law practice in Michigan Report to support its contention that a $210.00 billable rate is reasonable. (Ex. 11). The Court finds that $210 is a reasonable rate, given the median billable rate for an attorney in private practice in Oakland County, Michigan in 2013 was $250. (Ex. 11 at *8). Accordingly, the Court finds that the requested attorney's fees and costs of $1,714.86 is reasonable.

## IV. CONCLUSION

For these reasons, the Court GRANTS Plaintiff's Motion for Entry of Default Judgment and AWARDS damages and attorney's fees and costs in the total amount of $8,464.86. (ECF No. 14).

    IT IS SO ORDERED.

                                          s/Paul D. Borman
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

Dated: November 25, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 25, 2015.

                                              s/Deborah Tofil
                                              Case Manager